16693, 16793.　FORMAN, for use, etc., *v.* ÆTNA INSURANCE COMPANY; and *vice versa.*

The plaintiff having by his evidence proved a compliance with the contract sued on, the court erred in granting a nonsuit.

　　　DECIDED SEPTEMBER 29, 1926.

Complaint; from city court of Americus—Judge Harper. June 26, 1925.

This controversy has already been before this court three times. In *Ætna Ins. Co.* v. *Griffin*, 28 *Ga. App.* 774 (113 S. E. 224), Mrs. Ella Harris sued, for the use of Griffin, upon an insurance policy. It was there held that the contract sued upon had been extinguished by a new agreement between Forman and the insurance company, which amounted to an accord and satisfaction (this new agreement being the contract declared upon in the case at bar), and that the direction of a verdict for the plaintiff was error. Next, Mrs. Harris, for the use of Griffin, sued upon the new agreement, and this court held that the trial court properly dismissed the action, because the rights of Forman under this contract had never been transferred. See *Harris* v. *Ætna Ins. Co.*, 32 *Ga. App.* 48 (123 S. E. 27). In *Harris* v. *Ætna Ins. Co.*, 33 *Ga. App.* 71 (125 S. E. 597), this court adhered to the decision in 28 *Ga. App.* supra.

In the present case a suit upon the "new agreement" was brought by George M. Forman, for the use of C. C. Griffin, against Ætna Insurance Company, the petition being substantially as follows: (1) Defendant is a foreign corporation with an agent and place of business in Sumter county, Georgia. (2) Defendant was and is engaged in insuring houses and personal property against loss by fire. (3) On May 16, 1914, the defendant issued to Mrs. Ella Harris its policy of insurance No. 3404 for $3500, thereby insuring a dwelling house for $2500, the furniture therein for $500, a smoke-house for $125, a barn for $300, and a buggy-house for $75; said insurance being payable to George M. Forman as his interest might appear. (4) At the time said policy of insurance was issued, the said Mrs. Harris had procured from the said Forman a loan of $4000, and had pledged as security therefor lot No. 88 in the 15th district of Worth county, together with the buildings thereon; this being the same lot on which the said insured buildings were located. (5) On or about February 27, 1919, the said residence was destroyed by fire, and the said Mrs. Harris filed a proper proof of loss for $2500, the amount for which it was insured. This loss the company refused to pay, either to said Mrs. Harris or to said Forman. (6) On May 5, 1919, said Forman procured a judgment against said Mrs. Harris for the debt secured

by her security deed.　On May 19, 1919, he conveyed said land to Mrs. Harris for the purpose of levy and sale, and on October 31, 1919, filed the deed for record.　The execution issued on said judgment was levied upon the land pledged as security for her said debt to Forman, and, after proper advertisement said land was, on the first Tuesday in December, 1919, before the court-house door in Sylvester, Georgia, between the legal hours of sale, exposed to sale, when the same was knocked off to petitioner for $2500.　(7) On November 29, 1919, C. C. Griffin purchased from said Forman his interest in and to said land, said judgment and execution issued against said Mrs. Harris, and his interest in and to said policy of insurance, with all rights thereunder, as well as a transfer of the rights in and to the said Mrs. Harris' notes secured by said deed and insurance policy.　(8) The sheriff made to C. C. Griffin a deed to said lands purchased by said Griffin at said sale, the net proceeds of said sale, amounting to $2,425, being credited on said execution.　(9) There is still due on said execution the sum of $3,882.64.　(10) Before the sale of the said property, and pending negotiations regarding an adjustment of the loss occasioned by the destruction of said dwelling-house by fire, the following correspondence occurred between Whipple & McKenzie, as attorneys for George M. Forman, and Clarence Ruse, representing Ætna Insurance Company: (a) Letter dated October 13, 1919, from Clarence Ruse to Whipple & McKenzie, as follows: "I have discussed this matter with Mr. Leone, and while we do not ordinarily feel that it is the part of an insurance company to come into a claim of this kind until actually called upon to so do, we do feel that in justice to your good selves that we can take the position in this loss that we will make up any deficit up to the face of our policy, as between the price brought by the land and the claim of Mr. Forman.　We feel that you, representing Mr. Forman, will exercise due diligence in making the land bring as much as possible, and we would like to have you notify us of the date of this sale, so that if necessary we can have a man on the ground, and, if we find it expedient, can protect ourselves by bidding on the property.　Of course, when I refer to the face of the policy I mean the amount covering dwelling itself, and not the amount on household furniture, which is not included in the standard mortgage clause." (b) Letter dated October 27, 1919,

from Whipple & McKenzie to Clarence Ruse, as follows: "We beg to acknowledge receipt of yours of the 13th instant touching the loss in the above case, and note contents of letter. Under this agreement set forth in letter, we will have the property advertised during the month of November, to be sold on the first Tuesday in December, and shall be glad for you to have some one present to look after your interest at the sale, which will have to take place at Sylvester, Georgia." Said two letters form a contract, as decided by the Court of Appeals, between George M. Forman and Ætna Insurance Company, by which Forman's claim under said insurance policy with standard mortgage clause attached thereto was adjusted. (11) On November 29, 1919, said Forman transferred and assigned to C. C. Griffin all rights under said policy, including the adjustment set out in paragraph 10 hereof. (12) On November 29, 1919, said Whipple & McKenzie notified the agent of the defendant of the sale and of the transfer and assignment of all said papers and rights to C. C. Griffin. (13) In compliance with the request of the defendant and its agent, Clarence Ruse, said Forman, through his attorneys, Whipple & McKenzie, did on October 27, 1919, advise the defendant that said property deeded to said Forman by said Mrs. Harris to secure her said debt to him would be advertised during the month of November, 1919, and would be sold on the first Tuesday in December, 1919, at Sylvester, Georgia, and invited the defendant to have some one present at the sale to look after its interest. (14) In the transfer of his rights under said policy George M. Forman intended to pass to said Griffin all his rights in the premises, but inasmuch as the courts have held that said policy of insurance, in so far as it affected the rights of said Forman, had been satisfied under the contract evidenced by the writings set forth in paragraph 10 hereof, and inasmuch as the legal title of said contract is still in said Forman, though the equitable interest therein is in said Griffin, George M. Forman, for the use of said Griffin, brought this action for $2500 under said agreement set forth in paragraph 10 hereof. (15) There is due said Griffin on the execution transferred to him by said Forman $3882.64, besides interest. Said sum exceeds the amount of said insurance on said dwelling destroyed by fire, and under the terms of said agreement between said Forman and said defendant, as set forth in paragraph 10

hereof, defendant is liable in the sum of $2500, with interest since the sale of said land.

The plaintiff proved his case as laid except as to the allegation in paragraph 10 of the petition that the plaintiff had transferred the "adjustment" as therein alleged. At the conclusion of the taking of the plaintiff's testimony, the trial judge granted a nonsuit, upon the theory that the expression "We feel that you, representing Mr. Forman, will exercise due diligence in making the land bring as much as possible" was a material part of the contract, and that the plaintiff had failed to show a compliance with this provision of the contract.

*R. L. Maynard*, for plaintiff.

*James W. Smith, King, Spalding, MacDougald & Sibley*, for defendant.

STEPHENS, J. (After stating the foregoing facts.)

We are of the opinion that the above-quoted expression in the letter from the defendant to the plaintiff's attorneys, which contains the terms of the contract sued upon and which is set out in paragraph 10 of the petition, creates no obligation upon the plaintiff. This clause in the defendant's letter amounted to a mere expression by the defendant of confidence in the plaintiff's attorneys. It could not amount to more than an invitation from the writer of the letter to the plaintiff's attorneys to obligate themselves or the plaintiff to exercise the diligence referred to. If it was such an invitation it received no response from the plaintiff's attorneys, as in their answer to this letter no reference whatever was made to this suggestion. If this suggestion was a part of the defendant's offer, it was not accepted by the plaintiff through his attorneys, and no contract arose between the parties. Therefore, if this interchange of letters amounted to a contract, as is conceded by both parties to the litigation, this expression in the defendant's letter can not be considered as a part of the contract and must be disregarded. It appears, therefore, that the court erred in awarding a nonsuit.

It does not appear from the petition that there has been any former adjudication of the matter sued on. The petition set out a cause of action and was good against all of the demurrers interposed. No question as to the sufficiency of a plea of res judicata is made by the record.

*Judgment reversed on the main bill of exceptions; affirmed on the cross-bill. Jenkins, P. J., and Bell, J., concur.*